In the Matter of CUSTODY AND CONTROL OF Shane and Kayla MURPHY, Minors.

**Frederick Handleman, Appellants/Petitioners,**

v.

**Denis P. Walsh and Brigitte Walsh, Appellees/Intervenors,**

**Terrence Murphy, Appellee/Intervenor.**

No. Civ.A.2000–016.

District Court, Virgin Islands, Appellate Division, D. St. Thomas and St. John.

Nov. 1, 2001.

Frederick Handleman, St. Thomas, VI, for appellant pro se.

William Glore, Watts & Benham, St. Thomas, VI, for appellees/intervenors Denis and Brigitte Walsh.

Veronica J. Handy,[1] The Bornn Handy Law Firm, St. Thomas, VI, for appellee/intervenor Terrence Murphy.

Elizabeth Clark, Dudley, Clark & Chan, St. Thomas, VI, Guardian Ad Litem for Shane and Kayla Murphy.

BEFORE: RAYMOND L. FINCH, Chief Judge of the District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and ALPHONSO G. ANDREWS, JR., Territorial Court Judge, Division of St. Croix, Sitting by Designation.[2]

## MEMORANDUM OPINION

PER CURIAM.

## I. INTRODUCTION

This appeal is before the Court on the sole issue of whether, pursuant to this

---

1. Attorney Handy has represented to the Court that she has moved to withdraw from the Territorial Court matter.

2. Judge Andrews heard the initial appeal but is no longer a Territorial Court judge.

Court's order of June 15, 2000, the Territorial Court made sufficient findings of fact to conclude that, under the Uniform Child Custody Jurisdiction Act, it is in the best interest of the minor children for a New Jersey state court to continue to assert jurisdiction to modify a custody decree because the minor children still "have a significant connection" with New Jersey and there still is "substantial evidence concerning [their] present or future care, protection, training, and personal relationships" in New Jersey. For the reasons set forth below, we will vacate the Territorial Court's Corrected Response to this Court's Remand Order and instruct the court to conduct an evidentiary hearing consistent with this Court's original order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Lorraine Handleman, the deceased wife of appellant Frederick Handleman, previously was married to Terrence Murphy ["Murphy"]. Lorraine Handleman and Murphy had two children, Shane and Kayla Murphy ["minor children"]. Following their divorce in 1992, a state court in New Jersey awarded Lorraine Handleman and Murphy joint custody. Lorraine Handleman married Frederick Handleman in 1994 and subsequently petitioned the New Jersey state court for a change in custody. The court granted the motion and modified the custody award, giving sole custody to Lorraine Handleman and granting her permission to move with the minor children to the Virgin Islands, which she did in 1994. In September, 1997, when Shane was fourteen and Kayla was twelve, Lorraine and Frederick Handleman filed a petition in the Territorial Court of the Virgin Islands seeking joint custody of the minor children. Lorraine Handleman succumbed to cancer three days later. The Territorial Court subsequently awarded Frederick Handleman ["Handleman"] temporary custody of the minor children pending the resolution of the case.

The maternal grandparents of the minor children, Denis and Brigitte Walsh ["Walshes" or "appellees"] sought leave to intervene in the custody proceedings, as did Murphy, the long-lost biological father of the minor children. The Territorial Court permitted both parties to intervene.

### A. The Territorial Court's original order dismissing the custody petition

On December 17, 1999, the Territorial Court granted the Walshes' motion to dismiss, ruling that the Virgin Islands court lacked jurisdiction to alter the original child custody determination made by the New Jersey state court, and denying Handleman's motion to stay. Handleman timely filed a notice of appeal and requested a stay of the Territorial Court's judgment. On February 29, 2000, this Court granted Handleman's motion to stay and ordered that he retain temporary custody of the minor children. (Order, Civ.App. No.2000–016 (D.V.I.App.Div. Feb. 29, 2000)).

### B. The March 6, 2000, New Jersey Superior Court order

While Handleman's appeal was pending, the Superior Court in Sussex County, New Jersey determined that it retained jurisdiction over this matter. (*See* Order, *Walsh v. Handleman*, Docket No. FD–19–274–00 (N.J.Super.Ct.Ch.Div. March 6, 2000), attached to Intervenors Denis and Brigitte Walsh's Informational Filing Pursuant to Order of the New Jersey Superior Court, March 14, 2000). In its order, the New Jersey state court noted that it had consulted with the Territorial Court. The order directed that the minor children be "transported to New Jersey on or before June 26, 2000," so that the children could

meet with a psychologist and the guardian *ad litem* appointed by the New Jersey court. (*See id.*)

### C. This Court's June 15, 2000, order

In a Memorandum Opinion, this Court addressed the issue of whether, under the Uniform Child Custody Jurisdiction Act, ["UCCJA"], codified at V.I.CODE ANN. tit 16, §§ 115–39, and the Federal Parental Kidnaping Prevention Act ["PKPA"], 28 U.S.C. § 1738A, the Territorial Court had subject matter jurisdiction on September 12, 1997, to modify a child custody decree issued by the Superior Court of New Jersey. (*See* Order, Civ.App. No. 200–016 (D.V.I.App.Div. June 15, 2000)). In applying the UCCJA and the PKPA, this Court concluded that the Territorial Court had jurisdiction over this matter, and determined that the only basis for continuing jurisdiction to be found in New Jersey was as set forth in its equivalent statute to 16 V.I.C. § 117(a)(2), *i.e.*, N.J.STAT.ANN. § 2A:34–31(a)(2). Accordingly, we remanded this matter to the Territorial Court and instructed the judge to submit findings of fact on the following question: based on . the circumstances present in September 1997, whether it is in the best interest of the minor children for the New Jersey state court to continue to assume jurisdiction because the minor children still "have a significant connection" with New Jersey and there still is "substantial evidence concerning [their] present or future care, protection, training, and personal relationships" in New Jersey. This Court further directed the parties that the minor children shall remain in the Virgin Islands until the jurisdictional issue is resolved.

### D. The Territorial Court's Corrected Response to Remand Order

The trial judge, in her Corrected Response to this Court's Remand Order,[3] determined that New Jersey retained jurisdiction over this matter because the minor children had a significant connection with the State of New Jersey in September 1997, and substantial evidence concerning the minor's present or future care, protection, training, and personal relationships existed in New Jersey. (Corrected Territorial Court's Response to Remand Order, Terr.Ct. Family No. C36/1997, February 27, 2001). In making this determination, the judge relied upon the following facts: that (1) Murphy and Lorraine Handleman were married in New Jersey, (2) the minor children were born in New Jersey, (3) Murphy and Lorraine Handleman were divorced in New Jersey, (4) the minor children resided in New Jersey until some time after June 17, 1994, when a New Jersey state court granted Lorraine Handleman's request for sole custody of the minor children and granted her permission to relocate with the children to the Virgin Islands, (4) as of September 1997, the minors had spent the vast majority of their lives in New Jersey, (5) the New Jersey state court order of June 17, 1994, expressly provided for the New Jersey court to retain jurisdiction over the case, and (6) in September 1997, all close relatives of the minor children, including Murphy, their biological father, were residents of New Jersey.

---

**3.** The Territorial Court entered an original Response to Remand Order, dated February 21, 2001. The court subsequently entered a Corrected Territorial Court's Response to Remand Order, entered, *nunc pro tunc*, on February 21, 2001. (*See* Appellees/Intervenors' Informational Motion, March 1, 2001). The corrected response amended a subheading in the original order from "Proposed Findings of Fact," to "Findings of Fact." The subsequent version also contained additional "factual findings" concerning substantial evidence of the minors' present or future care, protection, training, and personal relationships.

Based on these facts, the Territorial Court concluded that "[a]ll evidence concerning the children's present or future care, protection and training in **New Jersey** can only be obtained from persons, entities and educational facilities in the State of **New Jersey**." (emphasis in the original order). The court also noted that the New Jersey state court, in its March 6, 2000, order, found that it had jurisdiction over this matter. The trial judge concluded, therefore, that the New Jersey state courts had continuing jurisdiction over this matter.

Handleman filed a timely notice of appeal and objected to the Territorial Court's corrected response to the remand order. He argues that the Territorial Court's response did not comply with this Court's order, misapplied the law, and was based upon unsubstantiated allegations which were contradicted by testimonial evidence in the record. Handleman contends that the judge's order is devoid of any indication or findings concerning the children's present or future care, protection, and training in the Virgin Islands. In addition, he maintains that he was not notified which judge would be addressing this Court's remand, and that the Territorial Court improperly served him with its order. Finally, Handleman requests that this Court grant custody of the children to him, or alternatively, remand the case to the Territorial Court with instructions that this case be heard by a judge other than Judge Brenda Hollar, because of her "blatantly obvious prejudice" against him and the minor children.

4. According to the Walshes' informational motion, Shane Murphy turned eighteen on July 15, 2001. (Appellees/Intervenors' Informational Motion, June 8, 2001).

5. *See* Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a. The complete Revised Or-

The guardian *ad litem* moved the Territorial Court to reconsider its motion, arguing that some of the court's factual findings were contradicted by evidence in the record and that due process was denied because the judge did not conduct an evidentiary hearing. Judge Hollar denied the guardian *ad litem's* motion for reconsideration, finding that this Court's directive did not instruct the Territorial Court to conduct an evidentiary hearing. (Territorial Court Order, Family No. C36/1997, April 11, 2001). It appears that the Walshes have not filed a response to either Handleman's or the guardian *ad litem's* motions.

## III. DISCUSSION

### A. Shane P. Murphy is no longer a minor

Initially, we must note that Shane Murphy recently turned eighteen. (*See* Appellees/Intervenors' Informational Motion, App. No.2000–16, June 8, 2001).[4] This custody matter, therefore, now pertains solely to Kayla Murphy ["Kayla"].

### B. Standard of Review

This Court has appellate jurisdiction to review judgments and orders of the Territorial Court in all civil cases. 4 V.I.C. § 33 (1997); Section 23A of the Revised Organic Act of 1954.[5]

▮▮▮▮ This Court exercises plenary review of the Territorial Court's application of legal precepts, and reviews factual findings for clear error. *Intown Prop. v. Castro*, Civ. No.1997–054, 2001 WL 1045121, at *1 (D.V.I. Sept. 5, 2001).

ganic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), *reprinted in* V.I.Code Ann. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I.Code Ann. tit. 1).

**C. Whether the Territorial Court's Corrected Response complied with this Court's June 15, 2001 order, and contained sufficient findings of fact**

This Court, in its June 15, 2001, order, remanded this matter to the Territorial Court and instructed the court to make factual findings on the question:

> based on the circumstances present in September, 1997, whether it is in the best interest of the minor children for the New Jersey state court to continue to assume jurisdiction because the minor children still "have a significant connection" with New Jersey and there still is "substantial evidence concerning [their] present or future care, protection, training, and personal relationships" in New Jersey.

■ The Territorial Court's Corrected Response fails to comply with this Court's remand order and controlling law. Under both Virgin Islands and New Jersey law, the New Jersey court can retain jurisdiction to modify this custody decree *only if it is in the best interest of the child* because the child or contestant has a significant connection with the state of New Jersey and there is substantial evidence within the State of New Jersey concerning the child's present or future care, protection, training, and personal relationships. *See* 16 V.I.C. § 117(a)(2) (1996); N.J.STAT.ANN. § 2A:34–31(a)(2) (2000) (emphasis added). The court's corrected response, however, does not contain any factual findings whether it was in Kayla's best interest for this matter to be determined in New Jersey. Absent from its order is any mention why it would be in Kayla's best interest to remove this matter to a New Jersey court, or how doing so might affect her. Judge Hollar thus misapplied the law and failed to follow this Court's order.

The trial judge found that Kayla had a "significant connection" with the State of New Jersey because, *inter alia*, she was born there, she had lived most of her life there, and all of her relatives lived in New Jersey. Although the record indicates that these facts are true, a determination that Kayla still had a "significant connection" with the state of New Jersey in September of 1997, based solely on these facts, appears erroneous in light of other evidence in the record. For instance, this conclusion disregards Kayla's own attestation that, when she lived in New Jersey, she visited her family members only on holidays, and that since moving to the Virgin Islands, she visited with her grandparents for "not more than a total of approximately two to three weeks." (*See* Guardian *Ad Litem's* Motion for Reconsideration, Exh. F, Affidavit of Kayla Murphy). Moreover, the order completely disregarded Kayla's relationship with her step-father, Handleman, and a step-sister, with whom she had been living in St. Thomas for three years.

Judge Hollar also seems to have misunderstood this Court's instructions. This Court directed the judge to determine whether there still is "substantial evidence concerning [Kayla's] present or future care, protection, training, and personal relationships" in New Jersey. The judge, upon remand, concluded that there was such evidence in New Jersey. In making this determination, the court found that (1) Terrence Murphy had maintained his residence in New Jersey, (2) all evidence concerning Kayla's relationships with family members was in New Jersey, and (3) "all evidence concerning the children's present or future care, protection and training in New Jersey can only be obtained from persons, entities and educational facilities in the State of New Jersey."

The trial judge misframed the issue. Instead of considering *where* evidence of Kayla's well-being existed in 1997, the court focused solely on facts based on evidence that may be *found in New Jersey*. In so doing, Judge Hollar completely ignored the fact that, as of September 1997, Kayla had lived in the Virgin Islands with her mother, brother, step-father, and step-sister for three years. Although the judge correctly noted that Kayla's mere physical presence in the Virgin Islands was insufficient to confer jurisdiction on the Virgin Islands court, she failed to acknowledge that, in 1997, evidence of Kayla's current schooling, friends, housing, acquaintances, and daily life was readily available in the Virgin Islands. Kayla herself attested that, since 1996, she had virtually no contact with friends in New Jersey, but that from 1994 through 1997, she had regular contact with many friends in St. Thomas. (*See* Guardian *Ad Litem's* Motion for Reconsideration, Exh. F, Affidavit of Kayla Murphy).

The trial judge nevertheless concluded that substantial evidence concerning Kayla's present or future well-being existed in New Jersey, in part, because Murphy, her biological father, resided there. First, the record indicates some doubt whether Terrence Murphy was even in New Jersey in 1997. (*See* Guardian *Ad Litem's* Motion For Reconsideration, Terrence Murphy's Response to Interrogatories, Exh. A). Second, this finding is disturbing in light of Kayla's statements that she has had little contact or support from Murphy since her parents' divorce. (*See* Guardian *Ad Litem's* Motion for Reconsideration, Exh. F, Affidavit of Kayla Murphy).

■ "Clear error exists when, giving all deference to the opportunity of the trial judge to evaluate the credibility of witnesses and to weigh the evidence, we are 'left with a definite and firm conviction

that a mistake has been committed.'" *Arroyo v. Bradshaw*, Civ. Nos.1998–159, 363–1998, 2000 WL 1738388, at *1 (D.V.I. June 1, 2000), (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). The record before this Court contains several facts that suggest that evidence of Kayla's care is here in the Virgin Islands, and clearly indicates that a mistake has been made in finding that evidence of Kayla's care is in New Jersey. The judge's corrected response, however, gives no indication that she ever considered these additional facts. Significantly, the court's findings of fact are taken, virtually *verbatim*, from the Walshes' proposed findings of fact. (*See* Intervenors/Appellees Submission of Proposed Findings of Fact, July 10, 2000). Accordingly, this Court will vacate the Territorial Court's Corrected Response to Remand Order and remand this matter to the court with instructions to conduct an evidentiary hearing on this matter.

**D. Whether this case should be remanded to the Territorial Court with instructions for an evidentiary hearing to be conducted by a different judge**

■ Handleman requests that this Court remand this matter to a different Territorial Court judge. He alleges that Judge Brenda Hollar has demonstrated a "blatantly obvious prejudice" against him and Kayla.

As the Court of Appeals for the Third Circuit recently noted, "it is the standard practice in the district courts and in this circuit that a case on remand is assigned to the judge who originally heard it." *Government of the Virgin Islands v. Walker*, 261 F.3d 370, 376 (3d Cir.2001) (quoting *United States v. Baylin*, 696 F.2d 1030, 1043 n. 30 (3d Cir.1982)). In the instance where a judge lacks impartiality or the

appearance of impartiality, however, remand to a different judge is necessary. *See id.* This Court, in *Karpouzis v. Government of the Virgin Islands,* determined that the trial court judge had "over-individualized" the defendant's sentence and had imposed an excessive bail. 58 F.Supp.2d 635, 638–39 (D.V.I.1999). We concluded that, although the record did not contain explicit proof that "personal animus" motivated the trial judge in sentencing the defendant, the trial judge's imposition of an excessive bail, violations of local sentencing provisions, and breach of promise at the plea colloquy that he would make no recommendation concerning work release created the "distinct suggestion" that the defendant's sentence may have resulted from bias. *Id.* at 639–40. Consequently, this Court remanded with instructions for resentencing to be assigned to a different judge. *Id.* at 640.

Here, Handleman avers that the trial judge is biased against him and Kayla. We find these allegations are conclusory and unsupported by Handleman's motion or the record. The record before this Court is replete with facts indicating that it is in Kayla's best interest that the Territorial Court retain jurisdiction over this custody matter. We have acknowledged that Judge Hollar's corrected response fails to consider or even mention these facts. This alone, however, is insufficient to cause us to vary the usual practice on remand. Consequently, Handleman's request that this matter be heard by another judge will be denied.

## IV. CONCLUSION

Because the Territorial Court failed to comply with this Court's June 6, 2000, order, misapplied the law, and made clearly erroneous factual findings, this Court will vacate the Territorial Court's Corrected Response to Remand Order and re-mand this matter to the court with instructions to conduct an evidentiary hearing on the issue.

## ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

**ORDERED** that the Territorial Court shall conduct an evidentiary hearing and resubmit finding of facts to this Court on the following question: based on the circumstances present in September 1997, whether it is in the best interest of Kayla Murphy for the New Jersey state court to continue to assume jurisdiction because Kayla still "has a significant connection" with New Jersey and there still is "substantial evidence concerning [her] present or future care, protection, training, and personal relationships" in New Jersey. The Territorial Court shall make these findings in accordance with the accompanying memorandum of even date. It is further

**ORDERED** that the parties shall **IMMEDIATELY** notify this Court if any transcripts are necessary for the Court to conduct its review once the Territorial Court renders its findings. All filings shall be made bearing the caption as shown above. The case shall continue to be heard by This Appellate Panel. It is further

**ORDERED** that the Court's Order dated February 29, 2000, which stayed the December 19, 1999, judgment of the Territorial Court and directed that Frederick Handleman retains temporary legal custody of Kayla Murphy, remains in effect. It is further

**ORDERED** that Kayla Murphy shall remain in the Virgin Islands until the issue

of jurisdiction raised in this appeal is resolved.